STATE of Missouri, Respondent,

v.

Raymond H. PHILLIPS, Appellant.

No. 54560.

Supreme Court of Missouri,
Division No. 2.

April 13, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

James L. Sivils, Jr., Springfield, for appellant.

STOCKARD, Commissioner.

Raymond H. Phillips was charged under the Second Offender Act with burglary, second degree, and found guilty by a jury. He was then sentenced by the court to imprisonment for a term of ten years, and he has appealed. The only contention is that the evidence was not sufficient to sustain a judgment of conviction, and the real basis of this contention is that the evidence

was not sufficient to authorize a finding that defendant participated in the burglary.

There is no question but that early in the morning of June 21, 1968, the IGA Foodliner, located in the Northview Shopping Center at the intersection of Commercial and National Streets in the City of Springfield was burglarized. At least one and possibly two outer doors were forced open, entrance was made by several persons, and a safe was moved from the front of the store to the rear near some doors. The arrival of the police caused the participants in the burglary to flee, two of whom were captured by the police. It is the contention of the State that defendant, who was apprehended by the police nearby, was also one of the participants. We need set forth in detail only the evidence pertaining to the identification of the defendant as one of the participants in the burglary.

Mrs. Capitola Reeves lived at 1115 East Thoman. The front of her house faced south and from it she looked directly onto the area at the back of the stores, including the IGA Foodliner, located in the Northview Shopping Center which was about 400 to 500 feet from her house. About 1:30 o'clock of the morning of June 21, Mrs. Reeves was sitting on her front porch and saw five men run along the lighted rear of the shopping center, break open a door to the IGA Foodliner, and then close the door after entering the building. "In a minute or less" she saw two more men run to the same door. One of them broke out the electric light over the door, and one of these men was wearing a red shirt. Mrs. Reeves telephoned the police, who arrived in "a minute or so." When the police arrived, all seven of the men who had entered the building ran out of the building, including the man with the red shirt, and ran northward. Police officers Woods and Stieb of the Springfield police department were nearby in a police car when they received a radio message to go to the IGA Foodliner. When they arrived, they observed "six or seven, several, subjects run from the vicinity of the back door" of the IGA Foodliner. They scattered but ran generally northward where railroad tracks were located. Both police officers gave chase. Officer Woods captured one of the fleeing men. Officer Stieb started chasing two of the fleeing men, one of whom was wearing a red shirt. The one with the red shirt ran northeasterly across the railroad where there was a "train overpass," and he ran down the northwest side of the embankment and disappeared. Officer Stieb then chased and caught the other fleeing man. After he returned the captured man to the area of the store, he "went over to see if [he] could catch any more," and went "over to the bank" and looked down and saw that Officer Coday had a man in custody who was wearing a red shirt. Officer Coday was nearby when he was directed, apparently by radio, to go to the IGA Foodliner. When he arrived at the corner of National and Commercial Streets, adjoining the Northview Shopping Center on the east, he drove underneath the viaduct which was a "short distance north and east" from the shopping center, and observed a man wearing a red shirt "coming off the bank just north of the viaduct there and run across the street" eastwardly but a "little bit to the south, southeast." The man ran up the embankment on the east side of National Street and north of the viaduct and "went up underneath some shrubs and bushes." When Officer Coday called to him to come down the man "stopped crawling and squatted down underneath this one bush" and sat there, but when another officer came with a dog, the man "started sliding down the bank." That person was the defendant, and Officer Coday placed him under arrest and returned him to the Foodliner. About 15 minutes later, Officer Coday found a pair of brown jersey work gloves "under the same bush" where defendant was sitting before he slid down the bank. In the store building, near the back door where the safe was found after it had been moved from the front of the building, there were two pry bars, and a "two-wheeled dolly" which did not belong to the Foodliner. Outside the doors there

was a large screw driver. An investigation for fingerprints was made but none were found.

■ The proof of the commission of a burglary was not based on circumstantial evidence, but the identity of defendant as one of the burglars was based on such evidence. Appellant cites State v. Bates, Mo., 439 S.W.2d 161, in support of the proposition that in such circumstances " 'the facts and circumstances relied upon by the State to establish guilt must not only be consistent with each other, and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence.' " We, of course, agree that this is a correct statement of the rule. See State v. Aguilar, Mo., 429 S.W.2d 754.

■ Defendant argues that the circumstances and facts in this case are not consistent with each other. He says that Officer Coday (but obviously meant to say Officer Stieb) testified that the man in the red shirt disappeared in a northeasterly direction, but that Officer Coday testified that defendant was running in a southeasterly direction when first seen. Defendant argues that "it is inconsistent with a hypothesis of defendant's guilt to believe that the defendant would be running in a southeasterly direction, which would actually take him closer to the scene of the crime."

This contention is of no merit for two reasons. First, the circumstances need not demonstrate an absolute impossibility of innocence, State v. Aguilar, supra, at p. 757, and it is not necessary that the circumstances exclude every unreasonable hypothesis of innocence. Second, defendant's contention is without merit factually. The railroad ran approximately east and west to the north of the shopping center. National Street adjoined the shopping center to the east, and National Street went under the railroad. Officer Stieb stated that defend-

ant ran northeasterly across the railroad tracks to where there was an overpass and ran down the northwest side of the embankment. When he arrived at National Street, which was where Officer Coday first saw him, he was running across the street to the east embankment. By marking marks on a photograph of the area of the underpass and National Street, Officer Coday showed that defendant had come down the west embankment to the street approximately 100 feet north of the overpass, and that he then ran southeasterly across National Street to wall of the underpass extending up the east embankment. Therefore, defendant was not running toward or closer to the Foodliner, but away from it, and there was no inconsistency in the testimony, and this testimony was not inconsistent with a hypothesis of guilt.

■ Defendant argues that although there was testimony that he attempted to hide, this was "not inconsistent with innocence." He cites no case so holding, and we think it is inconsistent with innocence; at least it is a matter that could be considered by the jury. But, assuming this one fact was not inconsistent with innocence, one such consistent fact does not destroy a circumstantial evidence case otherwise established. Defendant also argues that in a populated area, even at 1:30 or 2:00 o'clock in the morning, more than one person could be wearing a red shirt. This, of course, is not impossible, but the State's case does not rest on that simple fact alone. The State's evidence shows that a person wearing a red shirt committed a burglary, and when discovered he attempted to escape by running northeasterly over railroad tracks and down an embankment to the street which went under the railroad. Then, the defendant while wearing a red shirt, was seen by another police officer at the precise place and at the precise time, running still farther away, and who attempted to hide and escape.

The circumstances in this case are inconsistent with defendant's innocence. They are, of course, not absolutely conclu-

sive of guilt, and it is seldom in a circumstantial evidence case that they could be, but as noted, an absolute impossibility of innocence is not required. When the circumstances are considered together with the permissible inferences they point so clearly and satisfactorily to defendant's guilt that they exclude every reasonable hypothesis of innocence.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.