**STATE of Missouri, (Plaintiff) Respondent,**

v.

**George Edward MILLER, (Defendant) Appellant.**

**No. 57551.**

Supreme Court of Missouri, Division No. 1.

Oct. 8, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for (plaintiff) respondent.

Kirby, Lewis & Cohick, Maynard Cohick, Springfield, for (defendant) appellant.

HOLMAN, Judge.

Defendant was charged with burglary in the second degree and stealing. See §§ 560.070 and 560.156.[1] The information also charged a prior felony conviction under the provisions of § 556.280. The jury found defendant guilty of both offenses and the court (after making the required findings) fixed his punishment at imprisonment for a term of seven years for the burglary and five years for the stealing, the sentences to run concurrently. See §§ 560.095 and 560.110(1). Defendant has appealed. We have jurisdiction because the appeal involves a felony conviction, and was taken prior to January 1, 1972, the

effective date of new Art. V, § 3, Mo. Const., V.A.M.S. We affirm.

At some time between 4 and 9 o'clock p. m., on January 13, 1971, a warehouse of Dillard's Department Store was broken into. Among the items taken were approximately 1,500 shirts. At about 9:30 that evening the police department received a call from a next-door neighbor indicating that a possible burglary involving four men was in progress at 433 West Portland in Springfield. That information was broadcast and several police cars responded. Upon arrival at the house the police arrested the four men found there and also discovered about 25 bags filled with men's shirts marked "Dillard's."

A joint charge for the Dillard's burglary and stealing was filed against all of the men arrested. Each filed a motion to suppress certain evidence, including the shirts heretofore mentioned. The motions were, by agreement, heard together upon the same evidence and at the conclusion of the hearing were overruled. Defendant was separately tried and upon this appeal his principal contention is that the court erred in failing to sustain his motion to suppress because the articles involved were the fruits of an illegal search.

The evidence taken on the hearing of the motion to suppress is as follows: The house in question contained a living room, two bedrooms, a kitchen, and a small utility room off the kitchen which led to an attached garage. The men arrested when the officers went to that residence were Bobby Joe Ross, Donald Gene Vineyard, Clifford Wayne Morelock, and George Edward Miller, the defendant here. One of the first officers to arrive at the house was George Brinkman. He testified that he observed a green Buick backed into the driveway with the rear within a foot or two of the garage door; that he observed Morelock, through the garage window, sacking up some type of articles; that he had seen Morelock riding in the Buick at

1. Statutory references are to RSMo 1969, V.A.M.S.

various times and knew that he claimed the Pioneer Hotel as his residence; that he strongly believed that a burglary was in progess; that as he approached the front door he saw Morelock coming into the front room and when Morelock saw him he turned and started toward the kitchen; that he then went in and immediately placed Morelock under arrest and turned him over to another officer following him while he proceeded to look for the other three men he thought were in the house; that when he walked into the utility room he observed the shirts stacked in the garage through an open door between the utility room and garage; that he then discovered Vineyard hiding under a box in the utility room and arrested him.

Detective Ray Crocker testified that when he entered the house the officers had Morelock and Vineyard in custody; that he proceeded into one of the bedrooms where he found Bobby Ross hiding in a closet; that he then returned to the living room where he saw Officer Larbey discover defendant who was lying on the floor behind the couch; that he had known all four of these men for several years and knew that they were all convicted felons.

Officer Larbey testified that when he arrived at the premises he saw Morelock and Vineyard in the garage; that he then entered the house at the front door and proceeded to help look for the other men they thought were in the house; that he pulled out the couch in the living room and found defendant lying behind it and placed him under arrest.

The house was rented and occupied by one Joy Beavers who was not available at the time of the hearing. It was stipulated that at the preliminary hearing she testified that Morelock was a friend and was welcome in her home. It was not stipulated that she had authorized him to enter the home on the occasion in question.

Upon the trial of the case much of the evidence heretofore stated was repeated. In addition to that evidence there was testimony concerning the burglary of the warehouse and the fact that the shirts, a TV, and two stereos were taken. The TV and stereos were found later behind a nearby building. It had rained the day of the burglary and there was mud on the floor of the warehouse. When arrested all of the men had mud on their shoes. Samples of this mud were delivered to the highway patrol laboratory in Jefferson City and were tested by the laboratory technician. The technician stated that he found similarity of color and density of the samples taken from the warehouse and shoes and that the chances of finding similar soil elsewhere in Greene County were very slight.

Elbert Thompson testified that he lived next door to the Beavers residence; that about 9 p. m. on the day in question he heard noise at that house and observed six men going to and from the car and garage carrying bags; that after he and his wife had watched the activity for a time he called the police and reported that "something funny is going on over there"; that in addition to the green car in the driveway there was also a white car there but it was driven away before the police arrived. Mrs. Thompson testified that she observed the men carrying something in their arms that looked like blouses or shirts and placing them in bags; that defendant was one of the men she saw working in the garage at that time.

Defendant did not testify. He sought to establish an alibi by the testimony of Mrs. Retha Howard who stated that defendant had been with her most of the day of the burglary and that she had driven him to the Beavers residence at about 9:30 that evening so he could engage in a poker game.

In contending that the court erred in overruling his motion to suppress defendant takes the position that there was no probable cause for the arrest of the men involved; that the search was not valid as an incident to these arrests and that the

seizure of the shirts was not valid under the plain view doctrine.

We have concluded that the court did not err in overruling the motion to suppress. Our task in that regard is made much easier by the fact that the Court of Appeals, Springfield District, has recently reached that result in a companion case. See State v. Vineyard, 497 S.W.2d 821 (Mo.App. 1973). In Vineyard, as indicated, the decison was based upon the identical evidence that is before us. The opinion therein discusses the evidence and law in detail. We are in agreement therewith and consider that case to be sufficient authority for our ruling. We will, however, briefly discuss one feature of the case.

■ ■ For the reasons set out in Vineyard, we have no difficulty in concluding that the officers had probable cause for arresting the men found in the house. After Morelock was arrested there was no "search" in the sense that that word is ordinarily used in this type of situation. The officers were not seeking evidence but went through the house looking for the other three men. That was a reasonable and proper performance of their duties. In so doing they inadvertently discovered the 1,500 shirts which were in plain view in the attached garage. They were found before defendant was arrested. In the factual situation here presented the many "search and seizure" cases cited by defendant have no application.

■ In the cross-examination of Officer Brinkman the following occurred: "Q [by Mr. Williams] You checked the door and you saw lights on inside the house? A I seen a subject well known to me in the garage, Mr. Morelock; there was a light on in the dining room——." Defendant's attorney then moved for a mistrial on the ground that the reference to Morelock being well known to the officer placed defendant's character and reputation in issue. The court denied the motion for a mistrial but ordered the answer stricken and instructed the jury to disregard it. Defend-ant here contends that the court committed prejudicial error in failing to grant a mistrial. There is no merit in that contention. In the first place the fact that a person is well known to a police officer does not necessarily indicate that he is of bad character. And, in this case the statement was not made concerning defendant but another person. Furthermore, the court instructed the jury to disregard the statement which should have dispelled any possible prejudice. We also have in mind the rule that the trial court is vested with a broad discretion in determining whether to grant a mistrial and, as indicated, we rule that there was no abuse of that discretion in this instance. State v. Parker, 476 S.W.2d 513 (Mo. 1972). Cases cited by defendant, such as State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524 (1947), and State v. Mobley, 369 S.W.2d 576 (Mo. 1963), involve highly prejudicial remarks and arguments and have no application to the contention here.

■ ■ Defendant's final point is that the verdict was against the weight of the evidence in that the prosecution failed to establish his guilt beyond a reasonable doubt. We do not weigh the evidence in this type of case, but will assume that he seeks to question the sufficiency of the evidence to make a submissible case. We think the foregoing statement of facts will demonstrate that the evidence was sufficient. The unexplained possession of property recently stolen in a burglary is sufficient to support a submission of both the burglary and stealing. State v. Cobb, 444 S.W.2d 408 (Mo. 1969). Here, defendant was not only found hiding in the house where the shirts were discovered but was shown to have been filling the sacks with shirts a few minutes earlier. He was further connected with the burglary by the evidence that the mud on his shoes was similar to that found in and near the warehouse. This point is ruled adversely to defendant.

Judgment affirmed.

All concur.