**STATE of Missouri, Respondent,**

v.

**Bobby Luther HALBROOK, Appellant.**

No. 34832.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Nov. 20, 1973.

William J. Shaw, Frank Anzalone, Mary E. Fiser, Clayton, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Gene McNary, Frank Kaveney, Clayton, for respondent.

**440**

SMITH, Presiding Judge.

Defendant appeals his conviction for Attempted Second Degree Burglary following a jury trial in the Circuit Court of St. Louis County. He was sentenced as a second offender to five years imprisonment.

■ Defendant contests the sufficiency of the evidence to support the conviction. Therefore, we must review the evidence, keeping in mind that all of the evidence tending to support the verdict must be considered as true and every legitimate inference therefrom must be indulged. State v. Simmons, 494 S.W.2d 302 (Mo. 1973) [1]. Evidence fairly showing any form of affirmative participation in a crime will be sufficient to support a conviction. State v. Ramsey, 368 S.W.2d 413 (Mo.1968) [4–7]. Where the evidence is circumstantial, in order to sustain the conviction the facts and circumstances must be consistent with each other and with the theory of defendant's guilt and inconsistent with every reasonable theory of his innocence. State v. Phillips, 452 S.W.2d 187 (Mo.1970) [1].

The evidence favorable to the state is this: About 12:30 a. m. on December 29, 1971, Mr. Lewis Lapides, who is the proprietor of a bowling alley on Sutton Avenue in Maplewood, was leaving his place of business with two companions. The bowling alley is on the same side of the street as the Warson Cleaners, separated from the cleaners by an open parking lot. Lapides noticed a single car parked across the street under a street lamp. He described the vehicle as a late model Dodge or Plymouth, dark blue or green in color. *As soon as he noticed the car* he heard it honk its horn and he heard a sound like metal hitting concrete come from the rear of the Warson Cleaners. The car drove away at a normal rate of speed and Lapides was able to step into the street and get a look at the license plate and make note of the first three digits. He also noted that the car had a trailer hitch. Lapides described the driver as a white male with

black hair piled up or combed back on his head. As the car was pulling away, Lapides saw a man run from behind a car in the parking lot and dash south down the sidewalk on Sutton. Lapides recalled him as a white male, six feet tall, weighing two hundred pounds, with light brown or blond hair, with a prominent bald spot, and wearing dark pants and a tan waist-length jacket. After checking the back door of the cleaners and finding a metal object in front of the door and dents in the door itself, Lapides called the police. Investigating officers found that the door was damaged and discovered a car axle lying on the ground nearby. (The next morning officers recovered a piece of metal prybar on the landing adjacent to the back door of the cleaners.)

After hearing a radio alert, a policeman stopped a 1966 dark blue Dodge at an intersection about five blocks from the scene of the crime. The driver of the car was the defendant, and his passenger was Roy Cook, a blond white male, six feet tall, muscular, with a prominent bald spot. Looking into the car, the policeman saw a long-neck screw driver, a portion of prybar and several work gloves. He seized these items.

Mr. Lapides went to the intersection where defendant's car was stopped (within twenty minutes from the time he first called the police) and identified the first three digits of the license plate as identical to those of the car he saw leave the cleaners. The car also had a trailer hitch. Lapides could not positively identify either the driver or passenger, admitting the way the driver's hair was combed was the only significant thing he could recall about him.

At trial, a police chemist testified positively on the basis of his naked eye observation that the piece of prybar found behind the Warson Cleaners and the piece found in the car driven by defendant had once been one.

Defendant testified in his own behalf that he had been at a party at a given ad-

dress on the night of the crime at the apartment of one Bubby Johnson. He admitted that on the night in question he was in the company of Roy Cook, with whom he was arrested. His story was substantiated by a friend, but the State's evidence showed that there was no such address as that given by defendant; and two residents of the block where the address would have been had never heard of anyone named Bubby Johnson. Johnson was not produced.

■ We find that this evidence is sufficient to raise an inference of defendant's guilt from which reasonable minds could find guilt beyond a reasonable doubt.

The fact that defendant was driving the car identified as the one seen shortly before leaving the scene of the crime five blocks away; the fact that his passenger when apprehended reasonably fitted the description of the person running away from the cleaners; the fact that defendant admitted being in the company of his passenger, Roy Cook, on the evening in question; and the presence in the car defendant was driving of tools capable of facilitating a break-in and a broken piece of prybar which matched another broken piece found at the scene of the crime justify the inference that the defendant was the driver of the car Lapides and his companions observed leaving the immediate vicinity of the cleaners. *See, e. g.,* State v. McGlathery, 412 S.W.2d 445 (Mo.1967) *and* State v. Brown, 291 S.W.2d 615 (Mo. 1956).

The flight of the person matching Roy Cook's description following a sound like metal hitting concrete behind the cleaners, immediately following a horn honk at the time Lapides and his friends emerged from the bowling alley, all shortly after the attempted break-in at the cleaners, justifies the inference that Roy Cook was the person who tried to break in. See State v. Phillips, 452 S.W.2d 187 (Mo.1970).

And the presence of the car and driver under such suspicious circumstances, the honking of the horn followed immediately by the sound from the rear of the cleaners and the flight of Roy Cook, justifies the inference that the defendant was acting as a look out and was therefore guilty of the crime as an accomplice. *See* State v. Ramsey, 368 S.W.2d 413 (Mo.1963) [4–7].

These facts and circumstances and the reasonable inferences drawn therefrom are consistent with each other and consistent with the hypothesis of defendant's guilt. When considered together they point so clearly and satisfactorily to his guilt as to exclude any reasonable hypothesis of his innocence. We therefore conclude that the facts and circumstances shown by the evidence are sufficient, as a matter of law, if believed by the jury, to induce a belief of defendant's guilt beyond a reasonable doubt. *See,* State v. White, 439 S.W.2d 752 (Mo.1969).

■ The defendant also claims that it was error for the trial court to allow the police chemist to testify as an expert that the two pieces of prybar had once been joined. We find sufficient special knowledge in the witness to qualify him as an expert.

■ It is contended here that even if Mr. Roither is otherwise qualified, his testimony should not have been admitted because it invaded the province of the jury. This objection was not advanced to the trial court, either at the time of the testimony or in the motion for new trial. It is not preserved for review and we do not consider it plain error.

Defendant finally contends that the court below erred in its instruction regarding circumstantial evidence, and he urges us to invoke the plain error rule, Rule 27.-20(c) V.A.M.R., as the point was not properly preserved in Motion for New Trial.

We find nothing wrong with the instruction.

The judgment is affirmed.

CLEMENS and McMILLIAN, JJ., concur.