**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Steven Wesman WRIGHT,
Defendant-Appellant.**

**No. 42679.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 16, 1981.

Motions for Rehearing and/or Transfer to Supreme Court Denied July 10, 1981.

Application to Transfer Denied
Sept. 8, 1981.

Wion, Burke & Boll, Lawrence E. Manion, Jr., Clayton, for defendant-appellant.

Nancy D. Kelley, John Ashcroft, Paul R. Otto, Asst. Attys. Gen., Jefferson City, George Peach, Cir. Atty., St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of second degree burglary (Sec. 569.-170 RSMo 1978) and the resultant sentence of nine years imposed by the court pursuant to the persistent offender statute. (Sec. 558.016, RSMo 1978). We affirm.

Defendant's initial challenge is to the sufficiency of the evidence to support the conviction. We set forth the various factual conclusions which the evidence would support, the evidence to support those conclusions, and the legal impact of those conclusions.

(1) A Union Jack store on Olive St. between Sixth and Seventh Streets in St. Louis was burglarized at approximately midnight and 31 suits were stolen therefrom. The glass in the front door was broken out with a baseball bat. Clothing on a rack had disappeared. The entry and taking were without permission of the owner. These facts were undisputed and defendant makes no challenge here of their sufficiency to establish the corpus delecti of the charged crime.

(2) Defendant was in close proximity to the broken door. A glass shard found in his trousers matched a piece of broken glass from the door as to refractive index and density. An expert testified "there is a reasonable good possibility" that the glass shard from the trousers came from the "same source" as the glass from the scene. Such comparable features of glass is circumstantial evidence of presence at the scene of the crime. *State v. Armstrong*, 361 S.W.2d 811 (Mo.1962) l. c. 816. *See also State v. Williams*, 382 S.W.2d 597 (Mo.1964)

l. c. 599; *State v. Miller*, 499 S.W.2d 496 (Mo.1973) [4, 5].

■ (3) Defendant was in possession of the suits immediately after they were stolen from the store. A witness, Dicus, saw two men running from an alley a block from the burglarized store at 12:15 a. m. carrying large amounts of clothing. They entered a blue automobile bearing license number ABK–982. The witness could not identify the running men but one of them was wearing dark clothing. Within five minutes a black-over-blue Chevrolet automobile bearing license ABK–982 was stopped by a police officer, Thimling, within five blocks of the place where Dicus had seen the vehicle. The automobile was traveling without lights the wrong way on a one-way street. The driver of the automobile attempted to evade the officer but hit a curb and stopped. Two men were in the front of the car. Two men were in the back of the vehicle crouched over a pile of clothing later identified as 31 suits from the Union Jack store. The two men in the back exited the automobile and ran. The officer described one as wearing a black shirt and black trousers and the other as wearing blue bib overalls. Both were black. Within two blocks of the stopped vehicle another officer, Gross, saw two black men generally fitting the description given by Thimling standing on a concrete pillar on Memorial Drive above Highway 70. When ordered to come down the men jumped down to Highway 70 and ran. They were pursued by a third officer, Holland, who arrested them. One of the men was defendant who was wearing a gray shirt and black trousers and was perspiring heavily. There was testimony that the gray shirt would and did look black when wet. The other man arrested with defendant was wearing blue bib overalls. These facts are sufficient to circumstantially establish that defendant was in the back seat of the automobile in actual possession of the thirty-one suits stolen from the Union Jack store. Possession, including joint possession, of items recently stolen in a burglary supports an inference of guilt of both the burglary and the stealing. The bulk and nature of the stolen property has a bearing on the manner in which it may be possessed. The bulk and nature of the property here supports a conclusion that it was in the possession of the occupants of the back seat of the vehicle crouched over it. *State v. Cobb*, 444 S.W.2d 408 (Mo. banc 1969) [9, 10]; *State v. Arnold*, 566 S.W.2d 185 (Mo. banc 1978) [4, 5, 6, 7]; *State v. Miller, supra* [4, 5].

■ (4) Defendant attempted to flee and to conceal himself from the police officers and resisted arrest. We have already recited defendant's actions in the presence of Thimling and Gross and need not reiterate that evidence other than noting the extreme nature of the leap to the highway. After landing on the highway the two men began running and upon seeing Holland's police car jumped the median and attempted to hide behind it. When Holland approached and told them to remain where they were, both again fled. When Holland caught them and was attempting to effectuate their arrest they struggled and attempted to push the officer into oncoming traffic. Unexplained flight, attempted concealment, and resisting arrest are circumstances evidencing a consciousness of guilt inconsistent with innocence. *State v. Kilgore*, 447 S.W.2d 544 (Mo.1969) [4]; *State v. Phillips*, 452 S.W.2d 187 (Mo.1970); *State v. Miller, supra* [4, 5]; *State v. Campbell*, 533 S.W.2d 671 (Mo.App.1976) [1].

■ The evidence established the fact of a burglary, the presence of defendant at the scene, his possession of the recently stolen property, and his attempts to avoid arrest. That was sufficient to support the conviction. The cases relied upon by defendant are distinguishable as involving considerably less evidence of participation by the defendant than is present here. Defendant's complaints about certain inconsistencies in the evidence raise questions of weight and credibility which are matters for resolution by the jury.

Defendant's next point attacks the verdict-directing instruction on the basis that it was unsupported by the evidence. This argument is premised upon the same theory

that was advanced in his first point and is for the same reasons without merit.

■ Defendant's final point is that the court erred in preventing him from making specific inquiries of the venire on voir dire concerning prejudices which the veniremen might have because of defendant's Moslem religion. The trial court, at defendant's request, stated at a conference outside the presence of the veniremen, that it would identity defendant to the venire by his Moslem name which was Steven Wesman Wright-El. The record does not reflect whether the court did so identify him or not. Prior to voir dire examination the court did authorize a general question to the panel of whether the members possessed religious beliefs which would cause them difficulties in determining guilt or innocence, but refused defendant's request to allow specific inquiry into the panel's viewpoint on Moslems. The record on appeal does not contain the voir dire proceedings so we do not know what questions were in fact asked of the panel and what questions were not permitted. For that reason alone we could deny defendant's point. *Ward v. State*, 451 S.W.2d 79 (Mo. 1970) [1–3]; *State v. Ross*, 502 S.W.2d 241 (Mo.1973) [12]; *State v. Dodson*, 556 S.W.2d 938 (Mo.App.1977) [11, 12].

■ Even if the matter has been preserved we find no error. Defendant's religion was not involved in this case and had no relevance to the proceedings. That was not true in the cases relied upon by defendant. *See State v. Townes*, 522 S.W.2d 22 (Mo.App.1974); *United States v. Bear Runner*, 502 F.2d 908 (8 Cir. 1974). Both of those cases specifically point out that such inquiries are required only where the facts warrant it or involve an area of known prejudice. *See Yarborough v. United States*, 230 F.2d 56 (4 Cir. 1956) [11, 12]. There was no necessity to allow such an inquiry here. It is dubious that the jury would even be aware of defendant's religion from the name he utilized and his religious beliefs were not relevant to his guilt. The conduct of the voir dire examination was a matter for the exercise of judicial discretion and we find no abuse here. Defendant complains that prejudice occurred because friends of his of a similar religious persuasion, wearing fezes, entered the courtroom during the trial as spectators. The record reflects that this appearance was totally unexpected by anyone connected with the trial (except possibly the defendant). Such appearance can hardly serve to create error in proceedings held prior to the appearance.

Judgment affirmed.

SATZ, P. J., and SIMON, J., concur.