**STATE of Missouri, Respondent,**

v.

**Ralph TULL, Appellant.**

**No. 50036.**

Supreme Court of Missouri,

Division No. 1.

Feb. 10, 1964.

Ralph Tull, pro se.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Pendleton Goodall, Jr., Special Asst. Atty. Gen., St. Louis, for respondent.

HYDE, Judge.

Defendant charged under the Habitual Criminal Act (Sec. 556.280) was convicted of violence to "an officer and guard of the Department of Corrections" and sentenced to five years' imprisonment. Sec. 216.460. (Statutory references are to RSMo and V.A.M.S.) Defendant was represented at the trial by a lawyer employed by him but has filed his own brief which only claims error in failing to give an instruction on self-defense or to mention self-defense in the main instruction authorizing a finding of guilty.

The State's evidence showed that on March 13, 1962, Guard William H. Russell looked for defendant in the mess hall line but not finding him went to his cell, saw him there and ordered him to come out. When defendant did so Russell searched him and then ordered him to pull up his sleeves. Defendant first pulled up his left sleeve, then when he pulled up his right sleeve he hit Russell in the face with his fist and Russell knocked defendant down. Defendant got up, scuffled with Russell, ran

to his cell, locked the door, and grabbed "an envelope of stuff" from his dresser and "dumped it down" the toilet stool. (Russell said the envelope was one of the things he was looking for when he searched defendant.) Another officer unlocked the door and, when Russell went in, defendant struck him with a chair arm, breaking his wrist, when he put up his left arm to protect his head. Russell said when he got inside the cell defendant "was flushing something down the toilet stool"; but the envelope was on his dresser.

Defendant did not testify but had the testimony of an inmate trusty who was a hall tender and was present when Russell first ordered defendant to come out of his cell to be searched. He testified as follows: "Mr. Russell told him to turn around and he started shaking him down, and he asked him to look at his arms. And Mr. Tull—Mr. Russell was standing to Mr. Tull's right, and Mr. Tull was standing with his side to me, and Mr. Russell was almost facing me, and Mr. Tull held his left arm out, like this (indicating), and Mr. Russell was standing on his right side and Mr. Russell reached and got his arm and pulled it over closer to him and looked at his arm; and he asked Mr. Tull to hold his other arm up and Mr. Tull held his arm up closer to him and reached across and said something to him. He might have brushed him and hit him in the mouth or nose. Q Who hit who? A Mr. Russell hit Mr. Tull in the mouth or nose. Q. Prior to Mr. Russell hitting Mr. Tull in the nose, had Mr. Tull hit Mr. Russell? A No, sir. Q You stated he may have brushed up against him? A He could have brushed against him. Q You mean—A When he raised his arm, he could have brushed against him. I didn't see him, but it's possible that he did. * * Q Why do you say he might have brushed against him? A Well, for the reason Mr. Tull was standing sideways to me, Mr. Russell was standing almost facing me, and Mr. Tull was between Mr. Russell and I. And he could have brushed him when he raised his arm up. I didn't say he did, I

said he could have. * * * Q Well, you volunteered the statement that Tull might have brushed against Russell? A Yes, sir. Q Why do you volunteer that statement? A He could have brushed against him when he brought his arm up."

Certainly the state's evidence was sufficient to make a case for the jury and so the court properly denied defendant's motion for a judgment of acquittal which is the only ground stated in the motion for new trial (other than complaints about instructions) preserving anything for appellate review. The testimony of the trusty did not contradict Russell's testimony that defendant struck him in the face after he pulled up his right sleeve. It only showed that defendant brought his right arm up and might have made some contact with Russell but he could not see whether there was or not.

It appears from the record that guards go unarmed inside the penitentiary and that Russell was searching for material inmates were not authorized to have. Certainly defendant had no right to resist performance of his duty by Russell. "The obstruction of or resistance to a public officer in the performance of his duties is an offense at common law and by statute in all jurisdictions." 3 Wharton's Criminal Law and Procedure 632, Sec. 1283; see Secs. 557.200–557.220. In State v. White, Mo. Sup., 274 S.W. 17, we said concerning an arrest by an officer: "Under such circumstances the person arrested or sought to be arrested has no right to resist arrest, and if, in making resistance, he assaults the officer with a deadly weapon, he is guilty of felonious assault." In that case the court gave a self-defense instruction based on testimony that the officer struck defendant, while he was sitting on a bench in a public place, without saying he was an officer and wanted to arrest him until after he struck defendant. There is no issue in this case as to defendant knowing Russell was an officer and his purpose to perform his duty as an officer in making the search

and thereafter in entering the cell when defendant was attempting to dispose of material he was trying to find. Sec. 216.445 in part provides: "When * * * a single prisoner offers violence to an officer of a state penal institution * * * or resists or disobeys any lawful command, the officers of the institution shall use all suitable means to defend themselves, to enforce discipline, to secure the persons of the offenders and to prevent any such attempt or escape." ·   ·   ··

■ Defendant's brief ignores his act of striking Russell with the chair arm, breaking his wrist, when he started into the cell where defendant was disposing of the material Russell was searching for and when other guards were present. Instead of seeking to justify that act as self-defense he only argues in his brief concerning his use of force when Russell was examining his arms saying the trusty's evidence: "tends to establish that Tull was not an aggressor and that he was the victim of aggression; that when assailed he sought to avoid conflict; that when he could free himself from his assailant he retreated into his cell, which was the farthest place he could get in an effort to escape his assailant." Since defendant did not testify and claim any other reason or purpose, our conclusion is that all the evidence shows his use of violence to prevent an officer from performing his duty, similar to resisting a lawful arrest, and not self-defense. As right of officers to use force and the right of self-defense against illegal action by officers see 4 Am. Jur. 139, 148, 150, Assault and Battery, Secs. 20, 41, 46; 39 Am.Jur. 506, Obstructing Justice, Secs. 8–10; 6 C.J.S. Assault and Battery §§ 23b, 92d, pp. 825, 949; 4 Wharton's Criminal Law and Procedure 292, Sec. 1621. Our conclusion is that the evidence did not require the court to give a self-defense instruction in this case.

■ Defendant has not briefed his claim that the words "unlawfully" and "violence" used in the instruction authorizing a finding of guilty were not defined but this is with-

out merit because such words in common usage need not be defined. See State v. Holmes, Mo.Sup., 364 S.W.2d 537, 541; State v. Gridley, Mo.Sup., 353 S.W.2d 705, 707.

We have examined the record as required by our Rules 28.02 and 28.08, V.A.M.R. and find it sufficient with respect to those matters therein specified.

The judgment is affirmed.

All concur.