**STATE of Missouri, Respondent,**

v.

**Lloyd GOODMAN, Appellant.**

**No. 53066.**

Supreme Court of Missouri,
Division No. 2.

March 11, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Peter J. Maniscalco, Sp. Asst. Atty. Gen., Clayton, for respondent.

William A. Seibel, Jefferson City, for appellant.

FINCH, Presiding Judge.

Defendant was charged under the Habitual Criminal Act with felonious assault on

Lt. Whitworth, a prison guard, in violation of § 216.460 (all references are to RSMo 1959 and V.A.M.S.). He was found guilty by a jury and the court, having made the necessary findings relative to a prior conviction, sentenced defendant to imprisonment for three years, from which he appeals.

The state's evidence will support the following statement of facts: Defendant was serving a sentence of three years on a charge of assault with intent to kill with malice. At the time in question he was assigned to the Church Farm in Cole County, which is an auxiliary prison. At night the main building at the Church Farm is locked, but prisoners are not detained in locked cells. The only exception was a place referred to as segregation (or by prisoners as the hole) consisting of six locked cells located on the main floor near the office.

During the day prisoners were checked out of the main building to work at various places. On December 27, 1966, the defendant was assigned to work at the dairy barn. At about 6:30 p. m. the defendant, along with a group of approximately twenty-five other prisoners, was checked back into the main building by Guard Claude Woolery. Woolery noticed that defendant's face was somewhat red and his eyes bloodshot but said nothing to him. Shortly, two guards who had been at the dairy barn reported to Woolery that the defendant had been drinking that day and was drunk and they would like to have him put in segregation. Woolery contacted Lt. Whitworth, a prison guard, and related this information to him. Shortly thereafter, the two of them went to the floor of the dormitory known as Two Hall, where the defendant's compartment was located. The guards asked defendant to accompany them and when they got to the foot of the stairs the defendant stopped and asked, "What is this all about?" The guards told him that they had received a report that he had been drinking. Defendant responded, "Do I look like I am drunk? Smell my breath." Lt.

Whitworth responded that he had not said that the defendant was drunk, but rather that he had been reported to be drinking. Lt. Whitworth further testified that he was close enough to detect the odor of home brew or alcoholic beverage on the defendant's breath. Woolery referred to it as the odor of Tater Water.

The version of Mr. Woolery and Lt. Whitworth as to the conversation with the defendant varies somewhat. Mr. Woolery testified that he told defendant that they were going to put him in segregation. Lt. Whitworth testified that he told the defendant that they were going to take him up front to see Capt. Tucker, but he recognized that Woolery had mentioned going to segregation. In any event, both testified that defendant began to argue and said that he was not going to go to the hole and they would have to call the goon squad to put him there. Guard Woolery put his hand on the defendant's arm or shoulder, or possibly started to put it around his head, and the defendant jerked away and ran into what is referred to as the TV Room.

Woolery and Whitworth followed defendant to the TV Room. Woolery went in first and he testified that he had no recollection of anything which occurred after that until he was in the front office later that evening. Lt. Whitworth testified that the defendant turned as Woolery entered the TV Room and struck Woolery, who then fell to the floor and hit his head. Lt. Whitworth went to Woolery's assistance and tried to assist him. Meanwhile, defendant went to the other end of the room. Shortly, he came back and remarked that he had not intended to hit Woolery. They then started to leave the TV Room with Woolery walking behind Lt. Whitworth. Whitworth turned to see if Woolery was following, and at that time defendant, without warning, struck Lt. Whitworth with his fist, hitting him to the right of his eye and causing Whitworth to fall across a ping pong table. Woolery then grabbed the defendant and Whitworth got up and also

grabbed the defendant's arms. Woolery stated that he had the defendant and that Lt. Whitworth should go and get Capt. Tucker. He did so, but when he and Capt. Tucker returned the defendant had gotten away from Woolery and had gone into what is designated as Three Hall where the shower room is. Capt. Tucker followed defendant in there and ultimately brought him back. Defendant told Capt. Tucker that he had had a couple of drinks but that he had struck the officers in self-defense.

The defendant also took the stand and testified. He stated that the officers had told him they were going to take him to the hole and that he had asked to see Capt. Tucker. He stated that he had not hit either of the men but had acted only in self-defense and that he had scuffled and shoved when they grabbed him but was simply trying to get away. He denied that he had been drinking.

The defendant also called five other prisoners as witnesses. One gave his version of what occurred in the TV Room. Two testified that they were present when the officers came to Two Hall after the defendant and the officers had told him at that time that they were taking him to the hole because they had received a report he had been drinking. The others were ones who had been with the defendant at the dairy barn on that day and testified that he did not act like he was under the influence of intoxicants.

Defendant first attacks the sufficiency of the information. After alleging the prior conviction under which defendant was then imprisoned, the information was as follows:

"That thereafter on the 27th day of December, 1966, at Cole County, Missouri, the defendant, Lloyd Goodman, was a prisoner lawfully confined in the Auxiliary Prison at Cole County, Missouri, an institution under the control of the Department of Corrections of the State of Missouri, and James Whitworth was a duly appointed and acting officer and guard of the State Department of Corrections, and the defendant did at the said time and place unlawfully and feloniously offer violence to the said James Whitworth by then and there striking him on the face with his fists, against the peace and dignity of the State."

The defendant asserts that this information is fatally defective (1) because it does not allege a conspiracy and (2) because it does not allege that the assault was done with intent to do great bodily harm. A consideration of these assignments necessitates an examination of § 216.460, upon which the charge herein was based. That section is as follows:

"If several prisoners combine or any single prisoner offers any violence to any officer, guard or employee of the state department of corrections, or to any inmate, or does or attempts to do any injury to any building or workshop, or other property, each of such persons is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in an institution to which he may be assigned by the state department of corrections for not less than two nor more than five years."

■ In claiming that § 216.460 requires the allegation and proof of a conspiracy as an essential element of the offense thereunder, the defendant necessarily assumes that § 216.460 may be violated only if two or more prisoners conspire to do any of the prohibited acts, i. e., offer violence to any officer, guard or employee of the department of corrections, or to any inmate, or do or attempt to do injury to any building, workshop, or other property. This necessarily is true because more than one person is required for a conspiracy, which is defined in Webster's Third New International Dictionary as: "An agreement manifesting itself in words or deeds and made by two or more persons confederating to do an unlawful act or use unlawful means to do an act which is lawful." This assumption by the defendant is not a valid one because the plain language of § 216.460 proscribes acts by "any single prisoner" as well as by several prisoners who combine or conspire.

The section begins, "If several prisoners combine *or any single prisoner* offers any violence * * *." (Emphasis added.) This court previously has approved prosecution of a single prisoner, acting alone, for violation of § 216.460. State v. Tull, Mo., 375 S.W.2d 100 (wherein the information was almost identical with the information in this case). We hold that allegation of a conspiracy was not necessary where only a single prisoner is alleged to have violated the statute.

■ Defendant's second attack on the information is on the basis that it does not allege that the assault or violence to Lt. Whitworth was done with intent to do great bodily harm. Defendant cites § 559.190 and cases construing that section. They do hold that the information thereunder must charge and prove intent to do great bodily harm. Defendant's contention, however, overlooks the fact that the legislature, by the enactment of § 216.460, has seen fit to enact a separate section making an assault by a prisoner on a prison officer, guard or employee a felony. The information herein is based on § 216.460, not on § 559.190. Section 216.460 does not contain any language indicating that it is necessary to allege and prove that the assault was done with intent to inflict great bodily harm. The fact that the legislature included damage to property as well as violence to the person as acts which would constitute felonies clearly shows that it did not contemplate that the assault had to be with intent to do great bodily harm. Such a requirement could not possibly apply to a prosecution for doing or attempting to do injury to any building, workshop or other property. To make such a requirement in a prosecution for offering violence to a person would cause the statute to afford greater protection to property than persons.

The reason for the enactment of such a special statute is obvious. The ratio of guards to prisoners is not great and the prison employees go about the premises unarmed. It is essential that order be maintained and the employees protected. An assault (even without intent to do great bodily harm) or acts to destroy or damage property, might easily provoke more trouble, and possibly a riot, and the legislature determined by the enactment of § 216.460 that the doing of any of these acts would constitute a felony.

We overrule defendant's attack on the information. What we have said in this regard also disposes of defendant's assignments of error relating to the giving of Instruction C5, the refusing of Instruction D2, and the denial of defendant's motion for a directed verdict.

Defendant's next complaint is based on refusal by the trial court to give Instruction D1, which was as follows:

"The Court instructs the jury that a prisoner who has violated any rule or regulation of the institution relating to the government and conduct of inmates may, after proper hearing and upon order of the warden or superintendent, be confined in isolation upon short allowance for a period not to exceed ten days. The short allowance of such prisoner shall be prescribed by the physician who shall visit the prisoner and make periodic examinations into the state of his health until the prisoner is released from isolation and returned to his work.

"Thus, if you find and believe from the evidence, that at the time, or just prior to the time, of the alleged offense, the defendant Lloyd Goodman, was informed by prison Guard James Whitworth, or prison Guard Claude Woolery, that he was going to be taken to isolation, and that same was being done by said prison guards without any order from the warden or superintendent, and you further find and believe from the evidence that defendant Lloyd Goodman requested a hearing or conference with Capt Tucker, the officer in charge of Church farm, and that said Guards denied him the same and were attempting to use force to take defendant to isolation, if you so find, then said guards were acting beyond their legal authority, and if you fur-

ther find and believe from the evidence that defendant used only such force as was reasonable and necessary to resist the illegal efforts of the guards to take him to isolation, then you will acquit the defendant."

■ The first paragraph of Instruction D1 merely copies § 216.455(1) almost verbatim. The second paragraph of the instruction, in effect, tells the jury that if the guards were taking him to isolation without an order from the warden or superintendent, and denied his request to see Capt. Tucker, he was entitled to resort to self-help and to use such force as was necessary to prevent the guards from taking him to isolation. Such instruction was properly refused. Defendant was committed to Church Farm at the time. The rules of the institution prohibited drinking by prisoners. Defendant was subject to orders by Whitworth and Woolery, regular guards at the institution. The provisions of § 216.455(1) do apply to the prison but do not entitle prisoners to resort to self-help and to resist the directions of the officers. What was said in State v. King, Mo., 372 S.W.2d 857, 859, is applicable: "Nevertheless, for reasons which need not be repeated here, '(n)ot necessarily inconsistent with the rule that escape is justifiable where the imprisonment is "unlawful" are a number of cases holding that where the imprisonment is under color of law, the prisoner is not entitled to resort to self-help but must apply for his release through regular legal channels, even though he might be able to show such defects in the procedure by which he was arrested, tried, sentenced, committed or imprisoned as to justify or require his release on appeal or habeas corpus.' 70 A.L. R.2d 1. c. 1437." See also State v. Hart, Mo., 411 S.W.2d 143, 147[10], and State v.

Croney, Mo., 425 S.W.2d 65.

■ Finally, defendant complains that his counsel was denied the right to argue to the jury the failure of the state to produce witnesses to substantiate the testimony of Lt. Whitworth with respect to the assault on him in the TV Room. We find no merit in this contention. In the first place, counsel was permitted to argue that Whitworth offered the only evidence of that attack. When defendant started to argue the failure of the state to produce substantiating witnesses, the court sustained an objection on the basis that witnesses were equally available to defendant. It does not clearly appear that there were any other witnesses who did not testify, but if there were, they were other prisoners. No other guard was present when the blow was struck. If other prisoners were present, they were equally available to defendant as witnesses. This is demonstrated by the fact that defendant subpoenaed and used five other prisoners as witnesses. Under such circumstances, defendant was not entitled to comment adversely on the state's failure to call such persons as witnesses.

There is nothing to indicate that the state deliberately suppressed any evidence or that there was any unfairness or concealment on the part of the state. Defendant's brief does not contend that there was. This assignment is overruled.

We have examined the record as required by S.Ct. Rule 28.02, V.A.M.R., and find it sufficient with respect to the matters therein specified.

The judgment is affirmed.

All of the Judges concur.