STATE of Missouri, Plaintiff-Respondent,

v.

Maurice DENMON, Defendant-Appellant.

No. 56327.

Supreme Court of Missouri, Division No. 1.

Nov. 8, 1971.

As Modified on Court's Own Motion Dec. 13, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 13, 1971.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

John E. Burruss, Jr., Hendren & Andrae, Jefferson City, for appellant.

LAURANCE M. HYDE, Special Commissioner.

Defendant was convicted of offering violence to an officer of the State Department of Corrections in violation of § 216.460. He was tried as a second offender under § 556.280, found guilty by the jury and sentenced by the court to three years in the custody of the Department of Corrections (all statutory references are to RSMo and V.A.M.S.). We affirm.

The State's evidence was that guard officers Krieg and Holt came to defendant's cell in maximum security, it being their duty to take prisoners there to a barber chair for a shave and haircut and also for a shower. Holt and Krieg said Holt asked defendant to come out of his cell. Defendant was standing in his cell with a coffee cup in his right hand. Holt said he told defendant: "It is time for a haircut and shave." Defendant stood there so, after five or six minutes, Holt said he asked him again but defendant gave no answer and did not move. Holt, not armed, entered the cell (he said to cause defendant to come out). Holt said: "Sometimes the presence of an officer in the cell will cause them to come out." Holt said: "I got one or two steps in and he swung at me." He said defendant struck him, first with his left hand then, after dropping the cup, with his right. Krieg entered the cell with a backjack which Holt took and according to defendant struck him with it. Holt lost a front tooth from being struck by defendant. Krieg said Holt did not touch defendant until after defendant struck him.

Defendant said Holt and Krieg were talking to another officer, Sergeant Wade, in front of his cell before Holt came in his cell. Defendant said they did not ask him to come out but he also said: "This morning they came by for a shower." It was shown that defendant's cell was at the far end of the group of cells in the maximum security; that the officers (Holt and Krieg) had brought others out that morning starting at the other end; and that defendant "was the last man before lunch." Defendant said he would have come out if they had asked him but he also said: "I have an op-

tion when to shave and shower." Defendant said that Holt entered his cell and said: "We waited long enough for you Denmon." Defendant said Holt then walked behind him and grabbed him while he was leaning on his bed holding the cup. His description of what Holt did was:

"He came in and came behind me, and Officer Krieg was with him and stood in front of me, approximately three feet inside my cell, three feet in front of me. * * *

"Q. When he grabbed you, what do you mean by that? Tell us how. With his hands? What part of his body touched what part of your body?

"A. I can't state specifically what part of my body he placed his hands on. He was using his hands and tried to use all his weight to force me out of the cell. * * *

"Q. After Officer Holt grabbed you, what did you do then?

"A. I hit him. * * *

"Q. Why did you hit him?

"A. Because he became physically aggressive and violent with me."

■ Defendant claims error in refusing to give an instruction on self-defense, citing State v. Tull, Mo.Sup., 375 S.W.2d 100; State v. Kinard, Mo.Sup., 245 S.W.2d 890; State v. O'Kelley, Mo.Sup., 213 S.W.2d 963; State v. Stallings, Mo.Sup., 33 S.W.2d 914; Kansas City v. Mathis, Mo.App., 409 S.W.2d 280; § 216.445. Mathis involved resistance to an unlawful arrest. Section 216.445 prohibits any officer to "inflict any blows whatever on any inmate unless in self-defense or to suppress a revolt or insurrection." Defendant did not claim any blows on him until after he struck Holt. Stallings, O'Kelley and Kinard do not involve similar situations and are cited for statements about the right to instructions on any theory supported by evidence. State v. Tull was, as this is, a prosecution of a prisoner under § 216.460, in which we held the evidence was insufficient to require the giving of a

self-defense instruction. In that case, the defendant struck a prison officer who was searching him (apparently for drugs), when the officer "got his arm and pulled it over closer to him." Defendant then ran to his cell, dumped "an envelope of stuff" down the toilet stool and struck the officer again. We said: "[O]ur conclusion is that all the evidence shows his use of violence to prevent an officer from performing his duty, similar to resisting a lawful arrest, and not self-defense." The situation here seems similar.

In the more recent case of State v. Goodman, Mo.Sup., 425 S.W.2d 69, the defendant struck officers at a prison farm who were taking him from a dairy barn to put him in segregation because he had been drinking. We held provisions of § 216.455 (1), relied on concerning a hearing on a claim of violation of rules, "do not entitle prisoners to resort to self help and to resist the directions of the officers." In this case, it appears from defendant's own testimony that he must have known why the officers were there and we hold the court properly refused a self-defense instruction.

■ Defendant also claims error in receiving in evidence the penitentiary records showing that defendant was serving a sentence of 15 years for the offense of second degree murder. It was, of course, necessary for the State to show defendant was lawfully held as a prisoner. In State v. Goodman, 425 S.W.2d, 1. c. 70, this was done by showing: "Defendant was serving a sentence of three years on a charge of assault with intent to kill with malice." When the State offered the record of defendant's conviction and sentence, defendant's counsel said he would stipulate "that on March 10, 1970 he was an inmate of the Missouri State Penitentiary." He later added "lawfully confined" but the State did not agree to stipulate and the record of defendant's conviction was received in evidence. Defendant argues the provision of the Second Offender Act, § 556.280(2) that

evidence of the prior conviction "shall be heard and determined by the trial judge, out of the hearing of the jury," as a reason for not receiving the record of his conviction in evidence. We ruled a similar contention in State v. King, Mo.Sup., 375 S.W. 2d 34, 39, where the defendant likewise was charged under § 216.460, saying: "Here the prosecution was for an offense which could be committed only by a prisoner of the Department of Corrections. Evidence to show that the appellant was within the purview of the statute was correctly admissible. The best evidence of such fact would necessarily be the record of his conviction and testimony concerning his confinement thereunder. * * * The procedure of the Habitual Criminal Act does not preclude the presentation to the jury of evidence of a prior conviction insofar as such evidence is relevant to some issue other than the application of the Habitual Criminal Act." We hold the court was not required to compel the State to accept the proposed stipulation and that the record was admissible in evidence. Furthermore, the jury knew from the voir dire examination that defendant was a convict and would have been left to speculate that his offense and sentence could have been greater than it was.

In his argument to the jury, defendant's counsel commented on the fact that the State did not call Sergeant Wade as a witness, calling him an invisible witness and saying:

"I think you can infer there was a chance this man saw and heard things important to the trial of this case. That being so, it is incumbent on the State to bring him here to tell you what he saw or at least come and say, 'I walked over and didn't see or hear anything.'"

In the State's final argument this was answered as follows:

"MR. KINDER: That is the old invisible witness bit. Gentlemen, there was no evi-

dence in this case that Wade saw or heard anything. This defendant didn't know where Sergeant Wade was when the circumstances took place.

"The defendant himself said the side walls of the cell were solid walls. Sergeant Wade could have been within six or eight feet and not have seen anything. The two side walls are solid masonry walls. There is a thick wall separating—"

Defendant's counsel then made an objection; but by stipulation signed by him and the prosecuting attorney, and not included in the transcript herein, it was stated that the transcript did not correctly show what it was or what thereafter occurred. The stipulation stated that "in closing argument, the Prosecuting Attorney argued that Sgt. Wade was an equally available witness, and that defendant could have produced the said Sgt. Wade as well as the State; therefore, that no inference should be drawn from the State's failure to call Sgt. Wade as a witness"; that "Defendant's counsel made timely objection to the State's 'equally available' argument, on the ground that the witness was not in fact equally available, inasmuch as he was an employee of the State of Missouri, and specifically the Department of Corrections of the State of Missouri, at the time of the incident alleged"; and that "The trial court overruled the objection of defendant's counsel."

■■■ Defendant says: "The prosecuting attorney was permitted to argue over defendant's objection that the guard was equally available as a witness to the defendant"; and cites 29 Am.Jur.2d Evidence § 183, p. 230, and Adam Hat Stores v. Kansas City, Mo.App., 307 S.W.2d 36. It is true as defendant says that the rule applies to government employees and to rule that employees of the State were equally available to the defendant was erroneous. The court properly granted a new trial in the Adam Hat Stores case for making a statement and ruling that city employees were equally available to the plaintiff therein. However, we do not consider that case applicable to this case because here the State was arguing that Wade was not present or at least was not where he could have seen anything; and defendant did not know where Wade was when Holt came in his cell. He only said he had seen him with the other officers when he first saw them. Krieg said Wade came to tell them something about another inmate and was outside the cell walkway. Wade was not working with Krieg and Holt to take prisoners for haircuts, shaves and showers and Krieg did not know where he was when they went in defendant's cell. Defendant's claim here is that the State had the obligation to bring in Wade, even if he did not know anything about what occurred, to testify that he did not see or hear anything.

The two persons not produced by the City in the Adam Hat Stores case were city employees who had inspected the building involved after it was flooded from the City's water main and had made a report to the City about it. Thus there was no doubt about their knowledge of the damages which the plaintiff was seeking for the flooding. In this case, there was no testimony to show that Wade had any knowledge about the occurrence concerning which defendant says he should be brought in to testify.

Defendant claims he was entitled to an inference that Wade's testimony, if he were called as a witness, would be unfavorable to the State. It is said, 29 Am.Jur.2d Evidence § 186, p. 235: "[A] party is not bound to introduce every witness who might know anything about the matter at issue, at the risk of being burdened with an unfavorable inference because of his failure to do so." Likewise, we said in Wilson v. Miss Hulling's Cafeterias, 360 Mo. 559, 229 S.W.2d 556, l. c. 562: "[A]n unfavorable inference may not be drawn where the witnesses produced had equal or superior

knowledge to those not produced." See also Annotation 135 A.L.R. 1376. Defendant's claim here that the State should have brought in Wade to testify even if he did not see or hear anything cannot be held prejudicial error even though the court erroneously sustained an objection to it on the ground that Wade was a witness equally available to defendant because there is nothing to show he had any knowledge about the occurrence involved.

Defendant also claims error in denying his application for change of venue. However, failure to comply with Civil Rule 30.04 V.A.M.R. is admitted because the affidavits filed stated conclusions and not facts; were made jointly and not separately; and do not meet the requirement of separate affidavits of at least five credible, disinterested citizens residing in different neighborhoods of the county. Therefore, the court properly denied the application. Defendant also says the court was authorized by Rule 30.04 to order a change of venue on grounds within his own knowledge and claims it was an abuse of discretion to refuse to do so. This is based on defendant's claim that many residents of Cole County are prejudiced against inmates of the penitentiary, especially in this kind of a case; and that some members of the panel were acquainted with prison guards and their families. We have considered the voir dire examination and find no basis for holding the selection of the jury was improper or that the court abused its discretion in the selection of a fair and impartial jury or in refusing to order a change of venue on its own motion.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HYDE, Sp. C., is adopted as the opinion of the court.

Opinion modified on court's own motion.