**STATE of Missouri, Respondent,**

**v.**

**Sonny TOWNES, Appellant.**

**No. KCD 26967.**

Missouri Court of Appeals,
Kansas City District.

Nov. 4, 1974.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 18, 1975.

Richard R. Nacy, Jr., Asst. Circuit Public Defender, Jefferson City, for appellant.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER, WASSERSTROM and TURNAGE, JJ.

SHANGLER, Judge.

The defendant Townes, an inmate of the Missouri State Penitentiary was indicted under § 216.460, RSMo 1969, V.A.M.S., for the offense of offering violence to a prison guard. He was convicted by a jury and given punishment of two additional years imprisonment.

The evidence was that Townes, an inmate serving ten years for first degree robbery, was working in the metal factory of the penitentiary. He complained of illness and was taken to the prison hospital. Townes was examined and found to be sound, so Wyrick, a prison guard, was ordered to take Townes to the control center. Once there, Lt. Turner gave Townes the choice of going to work or going to punitive segregation. As Wyrick began to lead Townes away, Townes struck him in the face and then fled through the security door.

The first point made on this appeal is that a conviction for an offer of violence to a prison guard under § 216.460 cannot stand upon an indictment which charges, and evidence which proves, an actual assault. The appellant argues that the statutory language "offers any violence" expresses a legislative intent to proscribe only threats or attempts of violence, not accomplished assaults. We have recently examined the meaning of "offers any violence" within the context of § 216.460 [State v. Foster, Mo.App., 513 S.W.2d 657, adopted July 1, 1974] against a similar contention, and found the statute to prohibit actual as well as threatened violence.

At the trial a dispute arose between appellant and his counsel as to the advisability and manner of probing the prejudice of the jury venire concerning the doctrines of the Black Muslim sect, which appellant professed. When his counsel demurred, appellant asked the court to permit him to question the jury panel. The court directed him to communicate his questions to counsel for voir dire purposes, but appellant explained that his counsel refused to put the questions appellant had suggested. This essential colloquy followed:

THE COURT: You're sure you want to do this?

TOWNES: Yes your Honor.

THE COURT: Go right ahead.

[AT THE BENCH, WITHOUT THE HEARING OF THE JURY]

MR. NACY [Counsel for Townes]:

I regard one of the questions, at least, having to do with the Muslim belief that all white people are Devils, I would like to have the record show that I think it's prejudicial to the defendant to ask that question and do not think it should be asked because I think it would be prejudicial to him.

TOWNES: Your Honor, the defendant would like to ask the question at this time because it will show the true nature of the defendant and his belief, and this is something that the jury and the witnesses should hear, that they are entitled to know in order to establish a true verdict.

* * * * * *

THE COURT: It's over my better judgment and its over the objection of his counsel. Now, if he wants to ask them, let him ask them.

[BEFORE THE COURT AND JURY]

TOWNES: Jurors, I am no lawyer, not a very educated man so please do not hold my manner of speaking or grammar against me, but I have a few questions to ask the Jury because I feel they will be very important when it comes time for the jury to depart from the room to bring back a verdict.

I'm the defendant in the case and I'm what people call Black Muslim

* * * * * *

[I]t's our belief, we believe all white people are Devils. I'm asking the Jury, here with this statement and knowing that I feel that you all here are Devils, would this have any effect upon you bringing back a decision? Just knowing that I will be sitting here watching you—

THE COURT: Well, now, let's don't make a statement, let's just ask a question.

TOWNES: I would like to know if there is anyone here that would feel that it would be impossible for them to give me a just verdict knowing or hearing that the evidence in my favor to show that I am innocent, would you rule upon such evidence knowing that I feel that you are Devils?

THE COURT: Well, we have one hand up.

JUROR JUNE JUNGMEYER: I don't consider myself a Devil.

THE COURT: Mr. Jungmeyer, would that influence your verdict?

JUROR JUNE JUNGMEYER: Well, I don't consider myself a Devil.

THE COURT: Members of the Jury, he isn't saying that you are or aren't Devils, he's saying that's his belief.

TOWNES: I'm saying that you are. I would like to know if there is anyone here that believes he is not a Devil.

THE COURT: Sit down. Just a minute. Mr. Sheriff, put the defendant in his chair.

TOWNES: Let the record show that everyone in the room raised their hands to the question that they were Devils.

UNIDENTIFIED JUROR: I didn't raise my hand.

TWO UNIDENTIFIED JURORS: I didn't either.

THE COURT: Alright. Any other questions? Step up, Gentlemen.

The appellant now contends that it was error for the court to have allowed him to inform the jury that he was a Black Muslim, and that one of the principal beliefs was that all white people were devils, over the objection of counsel that such questioning would be prejudicial to appellant and in the face of the court's expression of misgiving.

To begin with, whether a defendant should be permitted to personally participate in a trial when he is represented by counsel is a matter resting within the sound discretion of the trial court. State v. Velanti, 331 S.W.2d 542, 546 [5] (Mo. 1960). The propriety of the acquiescence of the court in this case must be viewed in the perspective of complaints of the defendant, throughout the proceedings, that he was being denied due process, that he did not approve of his public defender counsel, and that he wished to present his own case. What is more to the point, however, the defendant framed his defense on the hypothesis that it is contrary to Black Muslim doctrine to strike anyone first and that the prison guard Wyrick, who had borne a long-standing animosity against the defendant, was the aggressor. Thus the disclosure that the defendant was a Black Muslim was inevitable under the evidence and trial strategy, and the voir dire inquiry which identified defendant as a member of that sect and probed for racial prejudice was proper. 54 A.L.R.2d 1204, Juror—Racial or Other Prejudice. Any inquiry into the latent prejudices of jurors is not calculated to ingratiate, and the defendant's even less so. We can only conclude, however, that the defendant considered the Black Muslim tenet that all whites are devils such common knowledge as to require his tactic in order to ensure him a fair trial. In this, he knew best. He now complains that this voir dire inquiry prejudiced him; how, he does not say. The record discloses that the voir dire, including the episode conducted by appellant, was supervised fairly by the trial judge. Although the appellant attempted to ask a proper voir dire question directed to any prejudice harbored by the jurors caused by the beliefs of Black Muslims, he proved to be an inartful inquisitor, and required admonition by the court. These admonitions proved futile and when it became apparent that the defendant's questioning and comments were causing confusion to the jury, the court promptly halted his activity. The trial court is given a broad discretion to control the voir dire examination and his rulings will not be disturbed unless a manifest abuse of discretion is shown. Handshy v. Nolte Petroleum Company, 421 S.W.2d 198, 201 (Mo. 1967). In this case the conduct of the court was consistent with both the rights of the defendant and orderly procedure.

The appellant contends next that the trial court erred in failing to grant his application for change of venue. On July 5, 1973, counsel for appellant received a letter from appellant dated July 3, 1973, requesting counsel to file an application for change of venue. Counsel prepared and on July 5, 1973, filed an application for change of venue with five affidavits, all to the effect that the inhabitants of Cole County were prejudiced against appellant because he was an inmate of the penitentiary. The court denied the application because filed less than five days before trial on July 9, 1973. Rule 30.04.

The appellant argues that since the allowed period was less than seven days, Rule 44.01 [Rule 31.01 as to criminal causes] required that July 4, a legal holiday, be excluded in the computation of this five day period, and consequently, the application filed on July 5, 1973, was timely. Appellant then contends that since it was timely and since Cole County is of a population of less than 75,000, the court had no choice but to grant the change of venue as of course. Rule 30.04; State ex rel. Johnson v. Green, 452 S.W.2d 814 (Mo. banc 1970). The point is without merit. A Sunday or legal holiday which falls within the period of time in which an act is to be done does not shorten the period, but is reckoned as part of it. State v. Light, 484 S.W.2d 275 [1] (Mo.1972). Consequently, in this case, the application for change of venue made after July 3, 1973, was untimely.

The final point is that the trial court erred in admitting the records and testimony of Harry Lauf, Records Officer

of the Missouri State Penitentiary, which showed that appellant had been convicted of first degree robbery and was serving a ten year sentence for that conviction at the time of the charged offense. Appellant argues that there was nothing to be proved by this evidence since he had admitted in voir dire that he was an inmate of the penitentiary, thus the only purpose for the additional proof was to prejudice the jury against him.

In this prosecution for offering violence to a prison guard in violation of § 216.460, the burden was on the state to prove beyond a reasonable doubt that Townes was a prisoner. State v. Jackson, 500 S.W.2d 306, 309 [2] (Mo.App.1973). The best evidence of such fact, necessarily, would be the record of his conviction and testimony concerning his confinement under the conviction. State v. Denmon, 473 S.W.2d 741, 744 [2] (Mo.1971). The admissibility of the record was not compromised by the admission of defense counsel that Townes was an inmate. In *Denmon,* when the state offered the record of defendant's conviction and sentence, defense counsel offered to stipulate that the defendant was an inmate lawfully confined. The state refused the stipulation and offered the record in evidence. The Missouri Supreme Court held that the trial court was not required to compel the state to the stipulation and that the records showing Denmon was serving fifteen years for second degree murder were admissible. Neither, we hold, did the admission by defendant Townes that he was a prisoner at the time of the offense charged preclude the state from its proof of that fact. The right of the state to offer, and to have received, evidence which is relevant and material to the issue cannot be taken away by an offer for stipulation or by an admission. State v. Boyer, 342 Mo. 64, 112 S.W.2d 575, 579 [5] (Mo.1937).

The judgment is affirmed.

All concur.