STATE of Missouri, Respondent,

v.

Harlan F. OVERKAMP, Appellant.

No. 62817.

Supreme Court of Missouri,
Division One.

Feb. 23, 1983.

Motion for Rehearing or Transfer to
Court En Banc Denied March 29, 1983.

Ronald J. Kaden, Shaw, Howlett & Schwartz, Clayton, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

WILLIAM E. SEAY, Special Judge.

Defendant appeals his second degree murder conviction for the killing of his ex-wife, Judith Ann Overkamp. His sentence was life imprisonment.

The following are alleged as errors requiring reversal: 1) Refusal to allow defendant to present evidence of a telephone call made to him by his ex-wife; 2) refusal to grant a change of venue on the basis of excessive media publicity; 3) failure of the state to prove the necessary elements of second degree murder; 4) failure to grant judgment of acquittal, as the circumstantial evidence adduced did not prove defendant's guilt; 5) error in submitting MAI–CR2d 15.14, second degree murder, as there was no proof of intent to kill; 6) error in the prosecution's closing argument.

Defendant and the victim's nine-year marriage was dissolved on April 8, 1980. In the evening of June 3, 1980, the victim was seen emerging from the Elaine Powers Figure Salon in St. Peters. The defendant was observed at that time in his motor vehicle parked behind the victim's auto on the Elaine Powers parking lot. Two shots rang out, and the victim was found dead on the parking lot—a single large caliber gunshot would to her chest causing her death. A .357 magnum identified as belonging to the defendant—a gift from his brother—was found next to the victim. The magnum had been fired twice.

About a half hour after the shooting incident, defendant arrived at the residence of his nephew. As defendant lay in the yard bleeding from a single abdominal gunshot wound, the nephew took a .22 caliber pistol from him, which defendant was attempting to load. Police were called, and defendant acknowledged to them that he had shot himself and the victim. He also admitted the killing to his brother's wife and told them that the victim could be found at the Elaine Powers parking lot. Further inculpatory statements regarding the killing of his ex-wife and shooting of himself were given by the defendant to two ambulance drivers.

Further implicative evidence came from the victim's mother, who related that defendant had told her that he would kill the victim if he caught her with a boyfriend.

Defendant testified, admitting that he had gone to Elaine Powers on the fateful evening but at the victim's invitation. As she approached him and he waited for her, he heard a loud noise—possibly two—and felt a searing pain in his stomach. He denied shooting anyone.

Defendant first contends that he was prevented at trial, on grounds of hearsay, from relating the substance of a telephone call from his ex-wife. Thus, he says, he was erroneously prevented from relating explanatory evidence that he had gone to the Elaine Powers parking lot at his ex-wife's insistence.

The defendant does have the right to explain evidence. *State v. Norris,* 577 S.W.2d 941, 949 (Mo.App.1979). Generally, however, hearsay evidence is inadmissible. *State v. Booth,* 515 S.W.2d 586, 591 (Mo. App.1974). But whether or not error occurred in sustaining objections to any particular hearsay telephone conversation between defendant and his ex-wife is not pertinent here, for defendant was given plenty of opportunity and did, in fact, relate in detail the substance of the telephone conversation with his ex-wife. He was permitted to tell the jury, more than once, that his ex-wife had called him and had told him to

meet her at the Elaine Powers parking lot. There is no error here.

 Defendant's next complaint concerns the trial court's refusal to grant his application for change of venue based on bias due to excessive media coverage.

At the time of trial, § 545.430, *et seq.* governed change of venue for defendant. The Eleventh Judicial Circuit, in which the case was tried, consists of St. Charles, Lincoln, and Pike counties, the latter two having fewer than 75,000 inhabitants.

Section 545.430, RSMo 1978, provides for a change of venue whenever it appears to the court that the minds of the inhabitants are so prejudiced against the defendant that a fair trial cannot be had therein. Section 545.450 provides for a change of venue from the circuit in which such prejudice exists, and both of the above quoted statutes refer to § 545.490. Section 545.490 provides the procedure to be followed by the applicant for a change of venue, and reads in part: "[S]uch petition shall be supported by the affidavit of the petitioner and the affidavit of at least two credible disinterested citizens of the county where said cause is pending and the truth of the allegations thereof shall be proved, to the satisfaction of the court, by legal and competent evidence...."

The same statute also states: "... provided, in all cases in counties in this state which now have or may hereafter have a population of less than seventy-five thousand inhabitants if such petition for a change of venue is supported by the affidavits of five or more credible disinterested citizens residing in different neighborhoods of the county where such case is pending, then the court or judge in vacation, shall grant such change of venue, as of course, without additional proof...."

It is therefore clear that in counties of fewer than 75,000 inhabitants, the applicant will be granted a change of venue if his petition is supported by the affidavits of five or more credible disinterested citizens. *State ex rel. Johnson v. Green,* 452 S.W.2d 814, 816 (Mo. banc 1970); *State v. Denmon,* 473 S.W.2d 741, 746 (Mo.1971). In counties having a population of 75,000 inhabitants, only two affidavits of credible disinterested witnesses are required, but the prosecuting attorney may rebut the applicant's evidence and the trial court has discretion to grant or deny the motion. *State v. Hayes,* 624 S.W.2d 16, 19 (Mo.1981); *State v. Singh,* 586 S.W.2d 410, 419 (Mo.App.1979).

A hearing on the motion for change of venue was held by the trial court and the state questioned twelve of the affiants. Seven had heard or knew nothing about the case; others had scant knowledge of the case; and only one of the affiants testified that the defendant would be prejudiced by a trial in St. Charles County, because it was "too close to Warren and Lincoln County." The trial court's ruling on defendant's application for a change of venue will not be disturbed, as no abuse of discretion appears.

 Defendant's next two assignments of error are directed at the trial court's failure to sustain his motion for judgment of acquittal at the close of all the evidence. In support of his first assignment, he asserts that the state did not sustain the burden of proof to establish agency in the commission of the crime, failed to show any voluntary or intentional act on the part of the defendant and did not show malice or deliberation by him in connection with the commission of the crime. In his second assignment, directed at the trial court's failure to sustain his motion for a judgment of acquittal at the close of all the evidence, defendant argues that the evidence in the case was insufficient as a matter of law to convict him.

Consideration of these contentions requires the review of the evidence in the light most favorable to the verdict, disregarding contrary evidence, and giving the state the benefit of all favorable inferences that can be drawn from the evidence. *State v. Newman,* 605 S.W.2d 781, 786 (Mo. 1980); *State v. Strickland,* 609 S.W.2d 392, 395 (Mo. banc 1980).

In his first assignment, defendant basically argues that the mere presence of a gun at the scene of a crime is not sufficient

evidence of the agency of defendant, that the state did not prove the agency, and that there was failure of proof of any voluntary or intentional act on the part of the defendant in the commission of the crime. He also contends that his evidence demonstrated that some unknown third party shot him and the victim.

We first recite some controlling legal principles: "Second Degree Murder is established by showing a willful, premeditated killing of a human being with malice aforethought." *State v. Mannon*, 637 S.W.2d 674, 678 (Mo. banc 1982); *State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). "The element of intent, which is a prerequisite to a finding of second degree murder, may be inferred from the circumstances." *State v. Little*, 601 S.W.2d 642, 643 (Mo.App.1980); *State v. Gillam*, 588 S.W.2d 13, 16 (Mo.App.1979). Previous threats by the accused to kill the deceased are admissible to show malice and premeditation or state of mind. *State v. Hunter*, 444 S.W.2d 392, 395 (Mo.1969). The jury may infer appellant's criminal intent from his declarations. *State v. Goforth*, 535 S.W.2d 464, 467 (Mo.App.1976).

Without again reviewing the evidence set forth at the outset of this opinion, we find that there was ample evidence to support defendant's conviction. The fact that his testimony is at odds with the evidence that which so substantially supports his conviction is not critical. It is for the jury to resolve any contradictions. *State v. Sanders*, 628 S.W.2d 390, 392 (Mo.App.1982). Nor is the fact that the state's witnesses failed to find fingerprints, powder burns or other incriminating residue on his body determinative of anything. The state is not required to conclusively establish guilt nor exclude every hypothesis of innocence, even in a circumstantial evidence case, *State v. Prier*, 634 S.W.2d 197, 199 (Mo. banc 1982), although the direct evidence of defendant's guilt in this case was overwhelming.

Defendant's next contention of error relates to the state's verdict director:

he contends that there is no evidentiary support of his intent to kill the deceased.

The state's verdict director follows MAI–CR2d 15.14. Defendant does not argue that the instruction is defective in its form; only that the evidence failed to support its second submission that he "intended" to take the life of Judith Ann Overkamp. The evidence was that he had made a threat on the victim's life, he possessed the .357 magnum, he was positively placed at the crime scene, and he admitted to several people that he had killed his ex-wife and shot himself.

The element of intent, which is a prerequisite to a finding of second degree murder, may be inferred from the circumstances. *State v. Little*, 601 S.W.2d at 643. Previous threats by the accused to kill the deceased are admissible to show malice and premeditation or state of mind. *State v. Hunter*, 444 S.W.2d at 395; *State v. Goforth*, 535 S.W.2d at 467. Under the circumstances of this case, there was no error in giving the state's verdict director. The evidence supported its submission and the intent of defendant to kill the victim.

Defendant's final point of alleged trial court error is directed at the prosecutor's closing argument. He asserts that he was prejudiced by the prosecutor's remark that "... he had been a prosecutor for six years and it was the job of the prosecuting attorney to see that justice was done." Defendant argues that the statement suggested to the jury that the prosecutor possessed confidential information and that the jurors should trust the prosecutor's judgment and not their own. But the state's argument must be put in context. *State v. Heinz*, 607 S.W.2d 873, 878 (Mo.App.1980). And the argument of the prosecutor continues as follows: "Whether the defendant is found guilty, the state hasn't won anything. If that's your verdict, that's your justice. If the defendant is found not guilty, the state has lost nothing. That's justice. Whatever your verdict is, is justice." In following the precept that the trial court has broad discretion in its control and determination of propriety of argument, *State v. Heinz*, 607

S.W.2d 873, 878 (Mo.App.1980), we find no abuse of that discretion or error in this instance in permitting the argument as made.

■ Defendant, finally, argues that a comment was an impermissible attempt by the prosecutor to define reasonable doubt: "Reasonable doubt is just beyond a reasonable doubt. Well, what's reasonable? Reasonable is what the twelve of you determine is reasonable and you can apply your common sense to that and again I ask you to do so. Apply common sense to the facts in this case and determine what's reasonable or not. It is the state's theory of what happened based on the facts that are reasonable." *See State v. Broomfield,* 637 S.W.2d 711, 714 (Mo.App.1981) and *State v. Fleming,* 577 S.W.2d 174, 176 (Mo.App.1975) (holding that a prosecutor is not forbidden from discussing "reasonable doubt" during closing argument) and *State v. Jones,* 615 S.W.2d 416, 420 (Mo.1981) (forbidding definition of reasonable doubt in erroneous terms).

The remarks of the prosecutor were not improper under the circumstances but only a permissible discussion of reasonable doubt.

The judgment is affirmed.

RENDLEN, C.J., MORGAN, Senior Judge and PARRISH, Special Judge, concur.

DONNELLY, J., not sitting.

GUNN, P.J., and BILLINGS, J., not participating because not members of the Court when cause was submitted.