STATE of Missouri, Respondent,

v.

Timothy COUNTS, Appellant.

No. 47543.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 9, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 19, 1984.

Application to Transfer Denied
July 17, 1984.

Donald J. Hager, Public Defender, Farmington, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Timothy Counts, defendant herein, was convicted, after a jury trial, of stealing without consent. § 570.030, RSMo (1978). He was sentenced to one year in the St. Francois County jail. On appeal he alleges that the evidence was insufficient to support his conviction and that the court erred in overruling his objection to allegedly improper argument by the prosecuting attorney. We affirm.

■■■ In testing the sufficiency of the evidence, facts and appropriate inferences intelligently drawn therefrom must be assessed in a light most favorable to the verdict and all adverse inferences and evidence disregarded. Review is limited to whether a submissible case was presented to the jury. *State v. Doebert*, 659 S.W.2d 280, 281 (Mo.App.1983). When, as here, the State's case is based on circumstantial evidence, the facts and circumstances relied upon to establish guilt must be consistent with each other and with the hypothesis of defendant's guilt. The facts and circumstances must also be inconsistent with and exclude every reasonable hypothesis of defendant's innocence. But the circumstances need not be absolutely conclusive of guilt or demonstrate impossibility of innocence, and the mere existence of other possible hypotheses is not enough to remove the case from the jury. *Id.* at 282.

Within this standard of review, we now consider the evidence. Some time late at night on November 10, 1982, or early in the morning of November 11, 1982, lumber and other materials having a value of over $150 were stolen from the Jennings Lumber Company in Farmington, Missouri. At about 11 o'clock that night Marion Carl left work and walked to his apartment about a block away. On his way he saw defendant standing by a white flatbed truck belonging to defendant's father in a lot across the street from Carl's place of employment and about a block from Jennings Lumber. About fifteen to twenty minutes after Carl

arrived home, defendant came to the apartment and stayed about five or six minutes. While there, defendant said that he was waiting for his father. After defendant left, Carl saw the white truck leave the place where it was parked and drive around the block to a store named Leadbelt Auto. As the truck neared Leadbelt Auto its headlights were turned off. The truck then backed up to the store. Carl testified that he thought there were three people in the truck at the time, although he was not certain. Leadbelt Auto either adjoins or is one lot away from Jennings Lumber's storage area. Carl then telephoned the police at about 12:10 a.m. Ten to fifteen minutes later Carl heard a voice coming from the direction of the truck say, "There goes a cop, let's get out of here." The truck then drove away. While it had been parked, Carl testified, he saw two pairs of feet from under the truck and saw no one exit the driver's door.

At 12:21 an Officer Giessing was dispatched to Leadbelt Auto in response to Carl's call. On his way he saw defendant's father's truck loaded with lumber driving from the direction of the store. After hearing that no truck was found at Leadbelt Auto, he stopped defendant's father's truck. The time was about 12:25 to 12:30. There were three people in the truck—defendant, his father, and his uncle. Because the theft from Jennings Lumber had not yet been discovered, Giessing allowed the truck to leave.

The truck was next placed at the farm of Harold Smith. Smith testified that early in the morning of November 11, 1982, defendant's father came to his door and asked permission to leave some lumber at Smith's farm. The reason given for the request was that two tires had blown out on defendant's father's truck. Smith's farm is about two and a half miles south of Bismarck, Missouri on Highway N. The property left at Smith's was that which was stolen from Jennings Lumber.

The truck was next stopped farther north on Highway N about three-quarters of a mile from Bismarck. The same three

occupants were in it. There were no visible indications that the truck had had any mechanical problems. The three were then arrested and brought back to Farmington. Upon being questioned by the Farmington police, defendant said the lumber had been purchased in St. Louis.

On appeal defendant asserts that the evidence was insufficient for the jury to find that he had the purpose of promoting the offense or that he acted with anyone in committing it. He concedes there was sufficient evidence to support a finding that the offense occurred, but argues that the circumstantial evidence does not preclude every reasonable theory of his innocence. We disagree.

Defendant was seen in the vicinity of the crime at or near the time it was committed. While this alone will not support a conviction, presence may be considered with other incriminating evidence to determine if the total circumstances raise an inference that the accused participated in the offense. *State v. Mason*, 657 S.W.2d 40, 43 (Mo.App.1983). Witness Carl testified, albeit equivocally, that he thought there were three people in the truck as it drove up to Leadbelt Auto. In addition, he testified that he saw two pairs of feet under the far side of the truck; and that no one exited from the driver's door, thus raising an inference that the two passengers got out while the driver waited in the truck. Defendant was seen in the truck almost immediately after it left Leadbelt Auto when it was carrying the stolen lumber and materials. Finally, after his arrest, defendant told the police that the lumber was obtained in St. Louis. This was a false exculpatory statement that evidenced consciousness of guilt. *State v. Green*, 639 S.W.2d 128, 130 (Mo.App.1982). Taken together, these facts were sufficient to allow the jury to find that defendant was present and participated in the theft. Defendant's first point is therefore without merit.

Defendant's next point alleges that the court erred in overruling his objection to the prosecutor's closing argument. The argument proceeded as follows:

[PROSECUTING ATTORNEY]: I must prove the case and I must put on witnesses, which I have done. I must prove the case and my burden of proof is beyond a reasonable doubt. It's not to an absolute certainty—
[DEFENSE COUNSEL]: Pardon me. I object to the prosecuting attorney defining beyond a reasonable doubt.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Overruled.
[PROSECUTING ATTORNEY]: Thank you. My burden of proof is not to an absolute certainty, it's not to beyond a shadow of a doubt. My burden of proof is beyond a reasonable doubt. I accept it everytime I try a criminal jury trial. That is the standard and that's the way it should be. You may have a doubt, but the question is does it rise to reasonable doubt. That is the question that needs to be looked at.

Defendant claims that this was an improper comment on the State's burden of proof which was prejudicial in light of the lack of overwhelming evidence of guilt. We disagree.

We note first the broad discretion of the trial court in its control and determination of the propriety of argument. *State v. Overkamp*, 646 S.W.2d 733, 737 (Mo.1983). In addition, an attorney may discuss reasonable doubt during closing argument and point out that not every doubt is a reasonable doubt. *State v. Williams*, 659 S.W.2d 778, 781 (Mo.banc 1983). It is in this area that the challenged remarks fell. They did not misstate or misdefine the State's burden nor did they imply a lesser burden that the law imposes. Rather, the argument was a permissible discussion of reasonable doubt, similar to that approved in *State v. Overkamp*, 646 S.W.2d at 738. Therefore, the trial court did not err in overruling defendant's objection.

The judgment of the trial court is affirmed.

KAROHL, P.J., and REINHARD, J., concur.